# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No. 23-mj-4170 |
| an Apple, blue, iPhone, Model: XR, currently located at 302 Innovation Drive, Suite 300, Franklin, TN 37067 | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __Middle__ District of __Tennessee__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(c) | Possession of a Firearm During the Commission of a Drug Trafficking Crime; |
| 21 U.S.C. § 841(a)(1); and | Possession of a Controlled Substance with the Intent to Distribute; and |
| 21 U.S.C. § 846 | Conspiracy to Commit a Drug Trafficking Crime |

The application is based on these facts:

See attached affidavit in support of the search warrant

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ David Raissi
*Applicant's signature*

SA David Raissi ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 04/03/2023

_____
*Judge's signature*

City and state: Nashville, Tennessee     Hon. Alistair E. Newbern, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF an Apple, blue, iPhone, Model: XR, CURRENTLY LOCATED AT 302 Innovation Drive, Suite 300, Franklin, TN 37067 | Case No. 23-mj-4170 |

**STATEMENT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, David Raissi, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since June 2020. I am currently assigned to the Nashville Field Division. Prior to being employed by the ATF I was employed by the Cobb County, Georgia, Police Department, beginning in 2007. While with the Cobb County Police Department, I worked in uniform patrol for approximately four years. After my assignment in uniformed patrol, I worked in various capacities as an investigator in Cobb County's multi-jurisdictional narcotics unit, the Cobb

1

County Police Department's Crimes Against Persons Division (Robbery/Homicide), and finally as a federally deputized Task Force Officer (TFO) for the ATF in the Atlanta Field Division.

3. In my law enforcement career, I have participated in numerous criminal investigations including those that fall under the investigative jurisdiction of ATF, including, but not limited to, violations involving the unlawful manufacture, sale, and possession of firearms and controlled substances.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is an Apple, blue, iPhone, Model: XR, hereinafter the "**TARGET DEVICE**." The **TARGET DEVICE** is currently located at 302 Innovation Drive, Suite 300, Franklin, TN 37067.

6. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

7. On March 29, 2023, officers of the Metro Nashville Police Department (MNPD) conducted an operation to arrest ROBINSON for an outstanding state arrest warrant previously issued by the Davidson County (Tennessee) General Sessions Court for the offense of Aggravated Assault.

8. On that day, ROBINSON was observed by law enforcement at an apartment that he (ROBINSON) had been previously associated with in another report made to law enforcement. The apartment is located on Premier Drive in Nashville, Tennessee.

9. MNPD observed ROBINSON leave the apartment building and enter the passenger seat

of a blue Dodge Challenger. S.S.[1] was the driver of the vehicle, and the vehicle is registered to her, and ROBINSON was the passenger as the vehicle exited the apartment complex. Per the same MNPD report that provided the address associated with ROBINSON, the complainant in that report indicated to officers that ROBINSON "always carries a pistol," "never keeps his drugs on him," and "they are always in the car or inside the apartment." This information was known to officers before the start of the arrest operation.

10. MNPD surveillance followed ROBINSON to a restaurant located on West End Avenue in Nashville. S.S. and ROBINSON exited the vehicle in a parking garage under the restaurant and then entered the restaurant. Surveillance remained in place. A short time later, S.S. and ROBINSON were observed exiting the restaurant and returning to the vehicle. S.S. then entered the driver's seat and ROBINSON entered the passenger seat of the vehicle.

11. MNPD then initiated the arrest of ROBINSON for the active warrant. When officers made contact with S.S. and ROBINSON, both were still inside the vehicle. Officers then called for S.S. and ROBINSON to get out the vehicle based on the information from the prior police report suggesting that ROBINSON would be armed with a firearm. MNPD then smelled the faint odor of marijuana about S.S.'s person. MNPD approached the vehicle, and a faint odor of marijuana was detected as emanating from within the vehicle. MNPD asked for consent to search the vehicle and S.S. gave verbal consent. S.S.'s verbal consent to search the vehicle was captured on the Body Worn Camera (BWC) being worn by the arresting officers. Officers then searched the vehicle.

12. Within the vehicle, on the front passenger seat, where ROBINSON had just been sitting, MNPD located a jacket. Officers who had been surveilling ROBINSON that day had seen

---

[1] S.S. is a real person whose identity is known to me and whose full name can be provided to the court upon request but is redacted her pursuant to D.O.J. policy.

ROBINSON wearing the jacket that day. Inside the jacket was a small black zipper bag containing approximately 12.8 grams of suspected cocaine base packaged in one clear plastic bag, approximately 11.5 grams of suspected cocaine HCL packaged in one clear plastic bag, approximately 4.2 grams of suspected marijuana packaged in a clear plastic bag and a digital scale. Under the passenger seat was a Glock, Model: 22, .40 caliber, pistol, containing a round in the chamber, next to the firearm was an extended Glock magazine containing a total of nineteen .40 caliber rounds. Furthermore, next to the firearm and magazine, underneath the passenger seat, were two Apple cellular phones, one of which was the **TARGET DEVICE** which ROBINSON later identified as his.

13. The recovered firearm (Glock) was previously reported stolen to MNPD. According to the police report, the firearm had been stolen from a vehicle on December 4, 2021.

14. S.S. was interviewed by MNPD. This interview was recorded on officer BWC. S.S. denied possessing the firearm and the controlled substances. S.S. stated that she knew ROBINSON to carry a firearm but stated that did not see him (ROBINSON) with a firearm on this date.

15. On March 30, 2023, ATF Nashville submitted a shell casing test fired from the seized, Glock, Model: 22, .40 caliber, pistol into the National Integrated Ballistic Information System (NIBIN).

16. On March 30, 2023, ATF Nashville received an investigative LEAD through correlation review. The test fire produced a LEAD to a Metro Nashville Police Department shooting which occurred on September 22, 2022. The shooting took place in Madison, Tennessee. The shooting occurred following a verbal dispute. MNPD was able to identify some of the involved parties and others remain unknown.

17. Based on my training and experience, I know individuals who are involved in narcotics trafficking regularly use cellular telephones, like the **TARGET DEVICE**, to communicate with

4

Case 3:23-mj-04170   Document 1-1   Filed 04/03/23   Page 5 of 14 PageID #: 9

customers and suppliers. Given that ROBINSON was wearing a jacket containing distribution amounts of narcotics later found in a vehicle in which he was a passenger, and claimed ownership of cellular telephones, including the **TARGET DEVICE** (which were recovered in the same vehicle), I submit that there is probable cause to believe that the **TARGET DEVICE** was used to communicate about narcotics trafficking.

18. Further, and also based on my training and experience, I know that cellular telephones, like the **TARGET DEVICE** can retain location data for an extended period of time and that most cellular telephone users carry their devices with them extensively. Given that ROBINSON claimed possession of cellular telephones, including the **TARGET DEVICE**, at the same time he was found in possession of a firearm linked to an earlier shooting, I submit that there is probable cause to believe that location data on the **TARGET DEVICE** will establish ROBINSON's presence at the September 22, 2022 shooting described above.

19. A background check on ROBINSON revealed that he has multiple felony convictions, including the following:

   a. On or about September 20, 2019, ROBINSON was convicted in Davidson County (TN), Case Number 2016-C-1504, offense date of April 9, 2016, for two counts of Aggravated Assault – Deadly Weapon and was sentenced to a six-year prison sentence.

   b. On or about September 20, 2019, ROBINSON was convicted in Davidson County (TN), Case Number 2017-A-81, offense date of October 21, 2016, for two counts of Aggravated Assault – Deadly Weapon and was sentenced to a six-year prison sentence, to run concurrent with the sentence under 2016-C-1504.

20. An ATF Firearms Nexus Expert examined photographs of the aforementioned firearm and determined that it is firearm within the meaning of Title 18, United States Code, Section,

921(a)(3). The Firearms Nexus Expert also determined that the firearm was not manufactured in the State of Tennessee, and therefore the firearm had previously traveled in and affected interstate commerce.

21. Given the fact that ROBINSON was previously convicted in Davidson County court (in 2019) of Aggravated Assault and sentenced to a six-year sentence, I submit that there is probable cause to believe that ROBINSON knew of his status as a convicted felon prior to March 29, 2023.

22. The **TARGET DEVICE** is currently in storage at 302 Innovation Drive, Suite 300, Franklin, TN 37067.

## TECHNICAL TERMS

23. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars;

and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such

7

Case 3:23-mj-04170 Document 1-1 Filed 04/03/23 Page 8 of 14 PageID #: 12

navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer

8

attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24. Based on my training, experience, and research, I know that the **TARGET DEVICE** has capabilities that allow it to serve as a wireless telephone, text messaging device, digital camera, portable media player, GPS navigation device, and PDA**.** In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET**

**DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to communicate with other persons to purchase, sell, obtain, manufacture illicit contraband and/or firearms, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

27. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

# ATTACHMENT A

The property to be searched is an Apple, blue, iPhone, Model: XR, hereinafter the **"TARGET** DEVICE." **The** TARGET DEVICE is currently located at 302 Innovation Drive, Suite 300, Franklin, TN 37067.

This warrant authorizes the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.





# ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 18 U.S.C. 922(g)(1), 21 USC 841(a)(1), 18 USC 924(C) and 924 and involve Steven Lamar ROBINSON since September 1, 2022, including:

   a. photographs, text messages, call logs, internet searches;

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked, purchased, as well as dates, places, and amounts of specific transactions;

   d. firearm sales or purchases, as well as dates, places, and amounts of specific transactions;

   e. any information related to sources of drugs, clients, customers and co-conspirators and/or firearms, firearm parts (including names, addresses, phone numbers, or any other identifying information);

   f. location data for the device.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.